# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Bankruptcy No. 19-35576 |
| RQW Real Estate Holdings LLC, et al. | ) Jointly Administered |
| | ) Honorable Deborah K. Thorne |
| Debtors. | ) |
| | ) |
| RQW Real Estate Holdings LLC., | ) |
| RQW Automotive Services LLC., and Eric Quick, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| Wilkie Holdings, Inc. | ) |

### COMPLAINT AGAINST WILKIE HOLDINGS
### FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF,
### BREACH OF CONTRACT AND CONTEMPT

RQW Real Estate Holdings LLC, RQW Automotive Services LLC, and Eric Quick through counsel, complaint against Wilkie Holdings, Inc. ("Defendant") as follows:

### INTRODUCTION

1. Defendant knew that confirmation of the Debtors' plan would give Eric Quick 100% ownership of the Debtors and would put to an end Defendant's baseless claims regarding its ownership interest in the Debtors. Mr. Quick obtained his 100% ownership interest in exchange for arranging exit financing that paid First Midwest Bank in full. That exit financing would not have been available from a new lender if Defendant still could claim an ownership interest in the Debtor.

{00194284}

2. The financing also released Defendant and its principle, Richard Wilkie, from their guaranty of the First Midwest Bank debt of $1.5 million and the mortgage on Richard Wilkie's house that was secured the First Midwest Bank debt. In all respects, the refinancing of the First Midwest Bank debt conferred substantial benefits upon the Defendant and its owners.

3. Defendant did not object to the Debtors' Plan. Defendant did not object to the provisions expressly eliminating any ownership interest Defendants may have had in the Debtors. Defendant also did not object to the provisions stating that Eric Quick would own 100% of the Debtors interests. Nor did Defendant object to the release in favor of Eric Quick that protected him from the claims Defendant asserted against Mr. Quick in a suit pending in DuPage County as Case No, 2018 CH 000791 (the "DuPage Suit").

4. Apparently believing it could lay in the weeds during the Chapter 11 case and surface with claims that are clearly barred by the actions of this Court, Defendant now contends that the Plan never happened, the Court never entered the Confirmation Order, and that Eric Quick is not the sole owner of the Debtors.

5. Defendant has advanced its spurious contentions in response to Eric Quick's motion to dismiss the DuPage Suit. Mr. Quick moved to dismiss the DuPage Suit on the grounds that the Confirmation Order barred them. Defendant objected to the dismissal by alleging he still has the right to pursue a rescission claim against Eric Quick. If successful, the rescission claim would undermine the ownership structure of the Debtors. If successful, Defendant's actions would result

in an ownership structure in which Defendant is a member of the Debtors. Deeming Defendant an owner of the Debtors would contradict the express language of the Confirmation Order.

6. Because the Confirmation Order bars Defendant from challenging the ownership structure of the Debtors and from pursuing all claims for damages other than those arising from fraud or willful misconduct, the Court should (a) enter an order holding Defendant in contempt for violating the Court's order, (b) enter a declaratory judgment stating that the Confirmation Order bars Defendant from continuing with the DuPage Suit, (c) award damages to Eric Quick and against Defendant on account of its breach of the Confirmation Order and (d) enjoin Wilkie Holdings from pursuing the DuPage Suit.

**JURISDICTION**

7. This adversary proceeding arises in the jointly administered chapter 11 bankruptcy cases of RQW Real Estate Holdings LLC ("Real Estate Debtor") and RQW Automotive Services LLC ("Auto Debtor" and, along with Real Estate Debtor, the "Debtors").

8. Pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over this proceeding, which is referred here pursuant to 28 U.S.C. § 157(b) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.

9. This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has constitutional authority to enter final judgments and orders herein. If a court

determines that any portion of this proceeding is not a core proceeding or that a bankruptcy judge does not have constitutional authority to enter final judgments in this proceeding, the Plaintiffs consent, pursuant to 28 U.S.C. § 157(c), to a bankruptcy judge hearing and finally determining the proceeding and entering appropriate orders and judgments.

10. This Court is the proper venue for this proceeding pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

11. Auto Debtor was formed on May 5, 2014 by Plaintiff, Eric Quick, and Defendant, Wilkie Holdings, pursuant to an Operating Agreement of RQW Automotive Services, LLC.

12. Real Estate Debtor was formed on May 1, 2016 by Plaintiff, Eric Quick, and Defendant, Wilkie Holdings, pursuant to an Operating Agreement of RQW Real Estate Holdings LLC

13. The purpose of the parties in entering into the Operating Agreements was to own and operate an Express Oil Change franchise ("EOC").

14. Pursuant to the First Amendment to the RQW Real Estate Holdings LLC Operating Agreement executed freely by the Eric Quick and Wilkie Holdings on September 20, 2017, the ownership structure would be re-adjusted in proportion to the funds each member contributed to the Debtors, and moving forward the ownership structure would be readjusted according to any future contribution of funds. Accordingly, on account of Eric Quick's contribution of more than

$595,000.00 to the Debtor, Eric Quick had an ownership interest of 71.27% as of December 21, 2018.

15.  Eric Quick also learned that Richard Wilkie, the sole owner of Wilkie Holdings and the manager of the EOC, had been breaching his duties to the Debtors and acting wrongfully in many respects. Such conduct consisted of misappropriating corporate funds for his personal use.

16.  On December 21, 2018, Eric Quick exercised his right as a 71.27% interest holder in Debtor to expel Wilkie Holdings from ownership of the Debtor.

17.  Eric Quick filed the DuPage Suit on account of the misconduct of Defendant and its owner, Richard Wilkie. On February 4, 2019, Eric Quick filed in the DuPage Suit a second amended complaint against Wilkie Holdings, Inc. Count 4 of the second amended complaint requested a declaratory judgment that Wilkie Holdings, Inc. had been removed as a member of the Debtors.

18.  Wilkie Holdings filed a counterclaim against Eric Quick in the DuPage Suit. The counterclaim alleged that Eric Quick breached the Debtors' Operating Agreements and sought to "rescind" the First Amendment by which Eric Quick obtained a 71.27% ownership interest in the Debtor.

19.  The counterclaim filed by Wilke Holdings in the DuPage Suit put a cloud on the ownership of the Debtors. That cloud precluded the Debtors from taking steps to resolve their financial difficulties and also contributed to the Debtors' financial difficulties.

## THE FIRST MIDWEST SUIT

20. The funds to construct the building out of which the Debtors operated were obtained through loans from First Midwest Bank. Eric Quick, Adriana Quick, Wilkie Holdings, Richard Wilkie and his wife, Mary, and the Debtors were obligated for the loan from First Midwest Bank. Richard Wilkie and his wife also granted First Midwest Bank a mortgage on their residence to secure the amounts they owed to First Midwest Bank.

21. On August 26, 2019, First Midwest Bank filed Case No. 2019 L 7673 in the Circuit Court of Cook County against Eric Quick and Adriana Quick (the "Quicks"), the Debtors, Wilkie Holdings, Inc., Richard Wilkie and Mary Wilkie (the "FMB Lawsuit"). The Bank's complaint in the FMB Lawsuit requested judgment of more than $1.5 million against the Quicks and the other defendants, including the Debtors and Wilkie Holdings.

22. Prior to the Petition Date, Eric Quick made attempts with First State Bank to resolve the dispute with Wilkie Holdings related to the ownership of the Debtors and related to the FMB Lawsuit. Those negotiations were designed to facilitate efforts to refinance the debt to First Midwest Bank and resolve the FMB Suit. Because Wilkie, as a putative holder of a 25% interest in the Debtors, was not willing to guarantee this loan. Eric Quick was unable to obtain a new loan to resolve the issues with First Midwest Bank because Richard Wilkie would not cooperate in those efforts unless he received substantial sums from Eric Quick.

23. First Midwest Bank continued to pursue the FMB Lawsuit and continued to seek a judgment of approximately $1.5 million against the Debtors, Wilkie Holdings, Richard Wilkie and his wife and the Quicks.

24. On December 18, 2019, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). On August 13, 2020, the Court confirmed the Debtors' Second Amended Plan of Reorganization, filed June 3, 2020 (ECF No. 66) (the "Plan").

25. During the pendency of the bankruptcy proceeding, First Midwest Bank was willing to informally forbear from proceeding with the FMB Lawsuit against the Quicks and the other non-debtor defendants. The Bank's willingness to forbear was due to their belief that the amount owed to them would get paid through a refinancing of the debt they were owed through the bankruptcy proceeding (the "Refinancing").

26. The Refinancing was centered around a new loan to be made to the Debtors by First State Bank in the amount of approximately $1,065,000 and by a contribution of cash from the Quicks. The Plan proposed to pay First Midwest Bank in full from the proceeds of the loan that Eric Quick was able to procure from First State Bank and from funds the Quicks advanced.

27. The loan from First State Bank was to be secured by the assets of the Debtors. First State Bank also was willing to make the loan only on the condition that Eric Quick agreed to guaranty the loan.

28. First State Bank was not willing to make the loan to the Debtors if Wilkie Holdings had or continued to assert an ownership interest in the Debtors.

29. Eric Quick was not willing to make the cash and guaranty contributions needed to provide the funds to pay First Midwest Bank absent language in the Plan and confirmation order that released and discharged the Quicks from liability to Richard Wilkie, Mary Wilkie and Wilkie Holdings on the Effective Date of the Plan.

30. To consummate the Refinancing from First State Bank and thus obtain the funds needed to pay First Midwest Bank in full, the Debtors proposed a plan that would wipe out the equity interests of Wilkie Holdings and vest complete ownership of the Debtors in Eric Quick.

31. The Plan put the equity interests of Wilkie Holdings in the Auto Debtor in Class 8 and the equity interests of Wilkie Holdings in the Real Estate Debtor in Class 7.

32. Classes 7 and 8 of the Plan set forth the treatment of equity interests of Wilkie Holdings.

33. Class 8 provided that the "Class 8 Interests of Wilkie Holdings will be cancelled, and Wilkie Holdings will no longer hold an Interest in Auto Debtor."

34. Class 7 provided that the "Class 7 Interests of Wilkie Holdings will be cancelled, and Wilkie Holdings will no longer hold an Interest in Auto Debtor."

35. The Plan put the equity interests of Eric Quick in the Real Estate Debtor in Class 5 and the Interests of Eric Quick in the Real Estate Debtor in Class 6.

36. Classes 5 and 6 of the Plan set forth the treatment of equity interests of Eric Quick.

37. Class 5 and Class 6 provided that "on the Confirmation Date [Eric Quick] will be the 100% owner of each of the Reorganized Debtors, without the need for any further action or order[.]"

38. The Plan further provided for a release in favor of Eric and Adriana Quick related to the claims asserted in the DuPage Suit:

> *Third Party Releases.* As of the Effective Date and in consideration of the Exit Financing, Eric and Adriana Quick shall be released and discharged by Richard Wilkie, Wilkie Holdings, LLC and Mary Wilkie, from any and all claims, liabilities, debts, suits and demands related to the Debtors in any way, including, but not limited to, the claims asserted against Eric Quick by Richard Wilkie and Wilkie Holdings, LLC, in the DuPage County suit and the claims against Eric Quick and Adriana Quick in the suit filed by First Midwest Bank in Cook County, except for the Bank, where the releases and discharges will be effective as of the Exit Financing Closing Date. The release does not apply to actual fraud, willful misconduct or gross negligence. Plan at § 8.3

**WILKIE HOLDINGS PUT ITS HEAD IN THE
SAND DURING THE BANKRUPTCY PROCEEDING**

39. On information and belief, Wilkie Holdings appeared at the meeting of creditors under § 341 of the Bankruptcy Code.

40. Other than attending the § 341 meeting, Wilkie Holdings did not object to the Plan and did not argue in the bankruptcy proceeding that the treatment of equity interests was improper or unfair. Wilkie Holdings also did not argue in the bankruptcy proceeding that the First Amendment to the Debtors' operating agreement that ultimately gave Eric Quick a 71.27% equity interest in the Debtors should be rescinded or that Eric Quick was not the sole owner of the Debtors. Wilkie Holdings and Richard Wilkie also did not object to the release provisions in the Plan.

41. On August 13, 2020, the Court entered an Order confirming the Plan, ECF 81 (the "Confirmation Order"). The Confirmation Order was not appealed.

42. As of August 13, 2020, the Court entered an Order adjudging that Eric Quick is the sole and 100% owner of RQW Holdings and RQW Automotive.

43. Wilkie Holdings received a copy of the Plan, the Disclosure Statement and the materials setting forth the time for objecting to the Plan and voting on the Plan.

44. Wilkie Holdings did not object to the Plan and did not submit a ballot for or against the Plan.

## COUNT 1: Declaratory Judgment that
## The Entire Suit is Barred by the Confirmation Order

45. Plaintiffs incorporate into this Count of the Complaint all the prior allegations of this Complaint as if fully set forth herein, except to the extent such allegations are inconsistent with the relief set forth in this Count.

46. Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Bankruptcy Courts, as units of the district court, have the authority to issue declaratory judgments.

47. Courts possess jurisdiction to issue declaratory relief where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

48. There is substantial controversy between Eric Quick and Wilkie Holdings of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

49. Wilkie Holdings has violated the Confirmation Order. Wilkie Holdings recently alleged that it intends to proceed with its claim to rescind the First Amendment to the RQW Operating Agreement.

50. The nature of a rescission claim involves the undoing of a contract and the restoration of the parties to the *status quo ante*.

51. The claim to rescind the Amendment to the Operating Agreement seeks to return Wilkie Holdings to the *status quo ante* with respect to the ownership of the Debtors. The rescission claim seeks to re-vest in Wilkie Holdings the

ownership interest in the Debtors that Wilkie Holdings alleges were wrongfully seized from it.

52. A declaratory judgment confirming that the Confirmation Order bars Wilkie Holdings' claim to rescind the First Amendment and to restore Wilkie to the *status quo ante* with respect to ownership of the Debtors is necessary and appropriate to provide meaning to the Plan.

53. Additionally, a declaratory judgment confirming that all claims asserted in the DuPage Suit by Richard Wilkie or Wilkie Holdings are barred by the confirmation of the Plan is necessary and appropriate to provide meaning to the Plan.

WHEREFORE, Plaintiffs request the entry of a declaratory judgment stating that the claims asserted by Wilkie Holdings or Richard Wilkie in the DuPage Suit are barred by the Confirmation Order.

## COUNT 2: Injunctive Relief

54. Plaintiffs incorporate into this Count of the Complaint all the prior allegations of this Complaint as if fully set forth herein, except to the extent such allegations are inconsistent with the relief set forth in this Count.

55. Wilkie Holdings' pursuit of the DuPage Suit will cause irreparable injury to the Debtors. Such injury consists of damage to the business relationships between the Debtors and third-parties, including First State Bank.

56. The Debtors have a substantial likelihood of prevailing on the merits of their claims against Wilkie Holdings.

57. Given that Wilkie Holdings is a shell entity that Richard Wilkie created to hold the ownership of the Debtors, a judgment against Wilkie Holdings does not provide an adequate remedy for the Debtors. Thus, injunctive relief is appropriate.

58. Injunctive relief barring Wilkie Holdings from pursuing the DuPage Suit comports with public policy. Wilkie Holdings' actions contravene the Court's order and there is a strong public interest in the sanctity and enforcement of court orders.

WHEREFORE, for all the foregoing reasons, the Debtors respectfully request that the Court enter a judgment against Wilkie Holdings (a) barring it from proceeding with the DuPage Suit and (b) providing such other and further relief as is proper.

## COUNT 3: Breach of Contract

59. Plaintiffs incorporate into this Count of the Complaint all the prior allegations of this Complaint as if fully set forth herein, except to the extent such allegations are inconsistent with the relief set forth in this Count.

60. A plan of reorganization is both a contract and a court order.

61. As a Plan, Wilkie Holdings agreed that all the Interests in the Debtors were owned by Eric Quick.

62. Wilkie Holdings did not object to the language in the Plan vesting 100% ownership of the Debtors in Eric Quick and the Plan is binding upon Wilkie Holdings.

63. Wilkie Holdings has breached the contract resulting from the entry of the Confirmation Order by taking actions to undermine Eric Quick's ownership of the Debtors.

64. As a result of Wilkie Holdings breach of the Plan, the Debtors have suffered damages. Such damages consist of the fees and expenses incurred to enforce the Debtors' rights under the Plan.

65. The Debtors have performed all the obligations that the Plan imposed upon them.

WHEREFORE, the Debtors seek the entry of judgment against Wilkie Holdings (a) for breaching the terms of the Plan in an amount to be determined at trial and (b) for such other and further relief as is just and proper.

## COUNT 4: Contempt

66. Plaintiffs incorporate into this Count of the Complaint all the prior allegations of this Complaint as if fully set forth herein, except to the extent such allegations are inconsistent with the relief set forth in this Count.

67. A plan of reorganization is both a contract and a court order.

68. Wilkie Holdings violated the Confirmation Order when it took steps to seize control of the ownership interests of Eric Quick in the Debtors.

WHEREFORE, Debtors request the entry of Judgment in their favor and against Wilkie Holdings (a) in an amount to be determined at trial on account of Wilkie Holding's violation of the Confirmation Order and (b) for such other and further relief as is just and proper.

        Respectfully Submitted,

        RQW Real Estate Holdings LLC.,
        RQW Automotive Services LLC., and
        Eric Quick

        By: /s/ William J. Factor
        One of Its Attorneys

William J. Factor (6205675)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel: (312) 878-6146
Fax: (847) 574-8233
Email: wfactor@wfactorlaw.com